# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

KWASI MITCHEL )
    Plaintiff, )
     )
v. )           CAUSE NO.: 2:11-CV-91-PRC
     )
JOHN BUNCICH, individually and in his )
capacity as Lake County Sheriff; LAKE )
COUNTY SHERIFF'S DEPARTMENT; )
JEFFREY KUMOREK, individually and in his )
capacity as Administrator of the Lake County Jail; )
and MED-STAFF, INC., )
    Defendants. )

## OPINION AND ORDER

This matter is before the Court on (1) a Sheriff Defendants[sic] Motion for Summary Judgment [DE 48], filed by Defendants John Buncich, individually and in his official capacity as Lake County Sheriff, Lake County Sheriff's Department, and Jeffrey Kumorek, individually and in his capacity as Administrator of the Lake County Jail (collectively "Sheriff Defendants") on June 15, 2012, and (2) a Sheriff Defendants[sic] Motion to Strike Plaintiff Affidavits Filed in Response to Motion for Summary Judgment [DE 61], filed by the Sheriff Defendants on September 26, 2012. For the following reasons, the Court grants the Motion to Strike and grants summary judgment in favor of the Sheriff Defendants and against Plaintiff Mitchell on all claims.

### PROCEDURAL BACKGROUND

On February 16, 2011, Plaintiff filed his Complaint in the Lake Superior Court against Lake County, Indiana, John Buncich as Lake County Sheriff, the Lake County Sheriff's Department, Jeffrey Kumorek as Administrator of the Lake County Jail, and Med-Staff, Inc. On March 9, 2011, Defendant Lake County, Indiana removed the case to this Court.

On April 28, 2011, Defendant Lake County, Indiana filed an Answer. On May 9, 2011, the Sheriff Defendants filed a Motion to Dismiss for Failure to State a Claim. On May 27, 2011, Defendant Med-Staff, Inc. filed a Motion to Dismiss for Failure to State a Claim and filed an Answer.

On June 30, 2011, Plaintiff filed a Motion to Amend Complaint. On August 1, 2011, the Court granted the Motion to Amend Complaint and denied the Sheriff Defendants' Motion to Dismiss as moot. On August 1, 2011, the Court also denied Med-Staff, Inc.'s Motion to Dismiss.

On August 5, 2011, Plaintiff filed an Amended Complaint against the same Defendants, bringing the Amended Complaint against John Buncich and Jeffrey Kumorek in both their individual and official capacities. In Count I, brought against the Sheriff Defendants, Plaintiff alleges that the guards and medical personnel at the Lake County Jail failed to provide adequate medical treatment, medical screening, and/or medication to Plaintiff as required for his injuries and illness, including failing to hospitalize him when informed that he required hospitalization, all while acting under color of state law and in the execution of deliberate official policy and custom of the Lake County Sheriff's Department. Plaintiff also alleges that, by delegating responsibility for medical care and treatment to Defendant Med-Staff, Inc., the Sheriff Defendants violated Plaintiff's right under Indiana law to receive adequate medical care as an inmate of a county jail. Plaintiff further alleges that the Defendants acted with deliberate and callous indifference toward the injuries and illness of Plaintiff and failed to provide him with adequate treatment, all while acting under color of state law and in the execution of deliberate official policy and custom of the Lake County Sheriff's Department. Plaintiff alleges that Defendants Buncich, Kumorek, and Med-Staff, Inc. knew of the failure to provide adequate treatment to Plaintiff for his injuries and illness, and personally, actively,

maliciously, and willfully acquiesced in and approved of this neglect of and negligence toward Plaintiff, all while acting under color of state law. Plaintiff alleges that these acts constitute violations of Plaintiff's rights under Article 1, Sections 15, 16, and 23 of the Indiana State Constitution and under the Eighth and Fourteenth Amendments of the United States Constitution, brought under 42 U.S.C. § 1983.

Count II of the Amended Complaint is brought against Defendant Med-Staff, Inc. only.

In Count III, Plaintiff alleges that the Lake County Sheriff's Department had a duty to staff the Jail with officers, administrators, and medical personnel properly trained to uphold the civil rights of its prisoners and pretrial detainees and that the Sheriff's Department breached this duty by failing to subject officers, administrators, and medical personnel to adequate hiring and training procedures, all while acting under color of state law. Plaintiff alleges that the Sheriff's Department further breached this duty by failing to reprimand or discipline officers, administrators, and medical personnel for the incident that is the subject of the Complaint, all while acting under the color of state law. Plaintiff alleges that these actions on the part of the Lake County Sheriff's Department are in violation of his rights under Article I, Sections 15, 16, and 23 of the Indiana State Constitution and under the Eighth and Fourteenth Amendments of the United States Constitution, brought under 42 U.S.C. § 1983.

The Sheriff Defendants filed an Answer on October 3, 2011, Lake County, Indiana filed an Answer on October 4, 2011, and Med-Staff, Inc. filed an Answer on October 14, 2011.

On March 29, 2012, the parties filed a Stipulation of Dismissal as to Defendant Lake County, Indiana.

The Sheriff Defendants filed the instant Motion for Summary Judgment and memorandum in support on June 15, 2012. On July 11, 2012, Plaintiff filed a Verified Motion for Extension of Time. The Court granted the motion, extending the response deadline to September 17, 2012.

On September 17, 2012, Plaintiff filed his response brief and four affidavits.

On September 26, 2012, the Sheriff Defendants filed a reply in support of the Motion for Summary Judgment.

The same date, the Sheriff Defendants filed the instant Motion to Strike Plaintiff Affidavits filed in Response to Motion for Summary Judgment. Plaintiff filed a response on October 6, 2012, and the Sheriff Defendants filed a reply on October 9, 2012.

The parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . " Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MOTION TO STRIKE

In support of his response to the Motion for Summary Judgment, Plaintiff submits four Affidavits–those of himself, his father Sam Mitchell, and fellow Lake County Jail inmates Brian Loggman and Ramsey Alexander. The Sheriff Defendants ask the Court to strike the four Affidavits because they are undated and because they contain information that is hearsay, lacks personal knowledge, or is otherwise inadmissible.

The Sheriff Defendants first argue that the Affidavits should be stricken because they are all undated. Federal statute sets forth the requirements for an unsworn declaration made under penalty of perjury, which includes that the statement be made in a writing, that the person states "as true under penalty of perjury," and that the statement be dated. 28 U.S.C. § 1746. Defendants recognize that the absence of a date is not, in and of itself, a reason to discount an affidavit or a declaration but contend that courts typically excuse such an omission only when extrinsic evidence demonstrates the approximate date of signing. *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 244 (D. Md. 2012); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002); *Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 842 (N.D. Ill. 2010). Plaintiff has offered no response to the argument and has offered no extrinsic evidence demonstrating the approximate date of signing. Accordingly, the Court grants the Motion to Strike on the basis that the Affidavits are undated, striking the Affidavits of Kwasi Mitchell, Sam Mitchell, Brian Loggman, and Ramsey Alexander submitted as exhibits A through D respectively in support of Plaintiff's response to Defendants' Motion for Summary Judgment.

The Sheriff Defendants have also submitted an undated affidavit. The Affidavit of John Buncich, attached as Exhibit 11 in support of the Motion for Summary Judgment, is undated. Defendants have offered no extrinsic evidence demonstrating the approximate date of signing. Accordingly, the Court *sua sponte* strikes the Affidavit of John Buncich.

Although the Court strikes each of the four Affidavits offered by Plaintiff on the basis that they are undated, the Court also considers the Sheriff Defendants' Motion to Strike specific paragraphs within each Affidavit. Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further provide, in relevant part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Hearsay, which is defined as a declarant's out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(a)(c), is not admissible unless allowed by statute, the Federal Rules of Evidence, or other rules created by the United States Supreme Court, *see* Fed. R. Evid. 802.

The Seventh Circuit Court of Appeals has found the following categories of statements not properly included in an affidavit: "(1) conclusory allegations absent supporting evidence; (2) legal argument; (3) selfserving statements without factual support in the record; (4) inferences or opinions not "grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Paniaguas v. Aldon Cos., Inc.*, No. 2:04-CV-468, 2006 WL 2568210, *4 (N.D. Ind. Sept. 5, 2006) (quoting *Moore v. Ashland Inc.*, No. IP-99-1173-C-T/G, 2000 WL 1672747, at *1 (S.D. Ind. Oct. 30, 2000) (internal citations omitted)). In addition, statements or conclusions that contradict prior deposition or other sworn testimony, without explaining the contradiction or attempting to resolve the disparity are not properly included in an affidavit. *See Snyder v. Livingston*, No. 1:11-CV-77, 2012 WL 1493863, at *1 (N.D. Ind. Apr. 27, 2012) (citing *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)).

With these standards in mind, the Court considers each Affidavit in turn.

## A.  Affidavit of Kwasi Mitchell

The Sheriff Defendants argue that paragraphs 3, 4, 5, 7, and 8 should be stricken.

### 1.  *Paragraph 3*

Paragraph 3 provides, in relevant part, that Defendants "failed to provide me with any medical treatment request cards and, on multiple occasions, refused to provide me with medical treatment after I orally requested it."  Pl. Resp., Exh. A, ¶ 3.  Defendants argue that this statement is a conclusory allegation lacking supporting evidence of specific incidents, that they have submitted documentation and records from many sources to demonstrate that adequate medical care was promptly provided, and that this statement is self-serving and factually inaccurate.  Plaintiff offers no response in support of this paragraph.  Although Plaintiff's statement concerns events that would be within his personal knowledge about events that allegedly happened to him, because they are conclusory allegations lacking support that do not identify when Plaintiff requested treatment or what he requested treatment for, the statements should be disregarded.  The Motion to Strike as to paragraph 3 is granted on this additional basis.

### 2.  *Paragraph 4*

Paragraph 4 provides:  "On March 13, 2009, I suffered a seizure severe[sic] causing me to fall unconscious, hitting my head against the floor of my cell.  During this seizure, I lost control of my bowels.  Defendants were aware of my condition and that I was not in physical control of myself, but left me lying on my cell floor, in my own excrement, without providing me with any medical treatment or other assistance.  These refusals were by both the Jail Staff and the Medical Staff."  Pl. Resp., Exh. A, ¶ 4.  Defendants challenge the statements regarding the failure to provide medical treatment and argue that the statements run counter to factual evidence and numerous sources of

record submitted by Defendants in support of the Motion for Summary Judgment. Plaintiff responds that his burden is to offer more than a "scintilla" of evidence to demonstrate the existence of a genuine issue of material fact, and that he has done so by offering the four Affidavits.

Although the jail and ambulance records submitted in support of the motion for summary judgment appear to be contrary to Plaintiff's statements, these statements are within Plaintiff's personal knowledge and are specific as to the date the events occurred. This is not a case in which an affidavit is offered to contradict a prior deposition or prior sworn testimony. The Court denies the Motion to Strike as to paragraph 4 on this basis.

*3. Paragraph 5*

Paragraph 5 provides: "Following this incident, I continued to suffer from increasingly severe, life-threatening seizures, which caused me further physical injury. Defendants continued to refuse to provide me with medical treatment despite multiple requests for treatment on my part, and refused to refer me for outside medical treatment." Pl. Resp., Exh. A, ¶ 5. Defendants challenge the statements regarding the failure to provide medical treatment and argue that the statements run counter to factual evidence and numerous sources of record. For the same reasons given as to Paragraph 4, the Court denies the Motion to Strike on this basis.

*4. Paragraph 7*

Paragraph 7 provides: "I was subsequently diagnosed with multiple medical conditions including hepatitis C, chronic seizure disorder, anxiety disorder, neuropathy and concussion-related brain damage. Except for the hepatitis C, all my medical symptoms were nonexistent before my incarceration and the Defendants' refusal to provide me with adequate medical treatment." Pl. Resp., Exh. A, ¶ 7. Defendants challenge the statements regarding the failure to provide medical

treatment and argue that the statements run counter to factual evidence and numerous sources of record. Defendants also argue that this paragraph contains inadmissible hearsay and unqualified medical opinions. Defendants reason that this paragraph confirms that the Sheriff Defendants did provide medical treatment because it was that treatment that revealed Plaintiff's chronic ailments, allegedly previously unknown to Plaintiff.

In response, Plaintiff argues that these statements qualify for the hearsay exception under Federal Rule of Evidence 803(4), which provides that the following is not excluded by the hearsay rule:

> Statement Made for Medical Diagnosis or Treatment. A statement that:
> (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and
> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

Fed. R. Evid. 803(4).[1] Rule 803(4) is inapplicable to the statements in paragraph 7 because the statements Plaintiff is making in the Affidavit in this court proceeding are not being made for the purpose of medical diagnosis or treatment to a person providing a medical diagnosis or medical treatment. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996). Similarly, statements that doctors may have made to Plaintiff in the past are also not made for the purpose of medical diagnosis or treatment and do not fall within the exception.

In addition, the first sentence is inadmissible hearsay because it is not testimony by Plaintiff regarding his subjective symptoms or the treatment he underwent; rather, the statement offers the medical opinions of Plaintiff's physicians who have diagnosed him with "medical conditions." *See Taylor v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 04C7270, 2008 WL 244303, *6 (N.D. Ill. Jan. 28,

---

[1] It appears that Plaintiff has cited a prior version of Federal Rule of Evidence 803(4), which was amended, effective Dec. 1, 2011.

2008) (citing cases). However, as to his statement in the second sentence that his "medical symptoms" were nonexistent prior to his incarceration, that statement is within his personal knowledge because he is aware of symptoms that he experiences because he is referring to "symptoms" rather than "conditions." Finally, as to the statement that the Defendants refused to provide him with medical treatment, that statement is within his personal knowledge. Therefore, the Court grants the Motion to Strike as to the first sentence of paragraph 7 on this additional basis and denies the Motion to Strike as to the second sentence of paragraph 7.

5.    *Paragraph 8*

Paragraph 8 provides: "I have been informed by medical personnel that my conditions and symptoms are now permanent." Pl. Resp., Exh. A, ¶ 8. Defendants argue that this paragraph contains inadmissible hearsay and unqualified medical opinion. Plaintiff responds that this statement falls within the hearsay exception for statements made for medical diagnosis or treatment under Rule 803(4). As with paragraph 7, the exception is inapplicable because Plaintiff is making the statement in his Affidavit for the purpose of this court proceeding and is not making the statement for the purpose of medical diagnosis or treatment to a person providing the diagnosis or treatment. *See Bombard*, 92 F.3d at 564. The statement is inadmissible hearsay, and the Court grants the Motion to Strike as to paragraph 8 on this additional basis.

## B.  Affidavit of Sam Mitchell

Although the Court has stricken Sam Mitchell's Affidavit on the ground that it is undated, the Court considers the additional bases for striking paragraphs 4, 5, 6, and 7 argued by the Sheriff Defendants. Sam Mitchell is Plaintiff's father.

*1.    Paragraphs 4, 6, and 7*

Defendants contend that paragraphs 4, 6, and 7 all contain allegations that the Sheriff Defendants did not provide medical treatment to Plaintiff and argue that the statements should be stricken because Sam Mitchell is without personal knowledge of these statements.  Defendants reason that Sam Mitchell was not in the jail and did not have personal contact with his son throughout the dates of his son's incarceration at the Lake County Jail.  Defendants argue that paragraph 7 also contains inadmissible hearsay and unqualified medical opinions.

Paragraph 4 provides: "I continued to call the Lake County Jail every day of my son's incarceration, every time reiterating the need for my son to have proper medical treatment for his substance abuse and chronic asthma.  Each time I called, Defendants informed me that he was receiving proper medical treatment.  However, I continued to call because I was aware that he was in fact suffering from serious medical complications that were not being adequately addressed."  Pl. Br., Exh. B, ¶ 4.  Plaintiff does not offer a response in support of this paragraph.  The first sentence is within Sam Mitchell's personal knowledge regarding his personal actions.  The second sentence is offered for the truth of the matter asserted and Plaintiff does not argue that it qualifies for a hearsay exception.  To the extent the third sentence is offered to show *why* Sam Mitchell called the jail, the sentence would not be hearsay; however, given the use of Sam Mitchell's Affidavit by Plaintiff, it appears that Plaintiff is using the statement "he was in fact suffering from serious medical complications that were not being adequately addressed" for the truth of the matter asserted.  The Court denies the Motion to Strike as to the first sentence of paragraph 4 and grants the Motion to Strike as to the remainder of paragraph 4 for these additional reasons.

Paragraph 6 provides: "On or about March 8, 2009, my son was found unconscious and unresponsive on the floor of his jail cell. He was then taken to a hospital for outside medical treatment." Pl. Br., Exh. B, ¶ 6. There is no basis for viewing these statements as within Sam Mitchell's personal knowledge as there is no evidence that he was in the jail or at the hospital to observe either event or that he has personal knowledge of the events in some other way. Plaintiff argues that this statement falls under the hearsay exception for statements made for medical diagnosis or treatment under Rule 803(4). These statements are not made to a person providing a diagnosis or treatment and they are not being made for the purposes of diagnosis or treatment. The statements are outside Sam Mitchell's personal knowledge and are being offered for the truth of the matter asserted. Accordingly, the Court grants the Motion to Strike paragraph 6 on this additional basis.

Paragraph 7 provides: "My son continues to suffer from medical conditions including hepatitis C, chronic seizure disorder, anxiety disorder, neuropathy and concussion-related brain damage. Except for the hepatitis C, all his medical symptoms were nonexistent before his incarceration and the Defendants' refusal to provide him adequate medical treatment. He has been informed by medical personnel that these conditions are now permanent." Pl. Br., Exh. B, ¶ 7. The first sentence constitutes unqualified medical opinions. To the extent Sam Mitchell is repeating diagnoses provided by medical professionals, the sentence constitutes inadmissible hearsay. As for the second sentence, Sam Mitchell does not state that he has personal knowledge of Plaintiff's medical condition, other than implying in paragraph 3 that he had knowledge that Plaintiff was a chronic heroin addict and abuser and that Plaintiff suffers from chronic asthma. The third statement is an out-of-court statement being offered for the truth of the matter asserted that does not fall within

the exception of Rule 803(4). The Court grants the Motion to Strike paragraph 7 on this additional basis.

2.     *Paragraph 5*

Paragraph 5 provides: "On or about March 6, 2009, I received a phone call from inmate Brian Loggman, who shared a jail cell with my son and was aware of my son's medical condition. Brian Loggman informed me that my son was not in fact receiving adequate medical treatment. He further said that my son was seriously and dangerously ill due to this lack of medical treatment, and that someone needed to provide my son with medical treatment or he was 'gonna die up there.'" Pl. Br., Exh. B, ¶ 5. Defendants argue that the statements that were made by declarant Brian Loggman to Sam Mitchell are being offered for the truth of the matter asserted, namely that Plaintiff did not receive adequate medical treatment, which would be inadmissible hearsay.

Plaintiff responds that Brian Loggman's statement was an "excited utterance" and, thus, an exception to the hearsay rule under Federal Rule of Evidence 803(2). Rule 803(2) provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the rule against hearsay. Fed. R. Evid. 803(2). "Hearsay statements are admissible under the excited utterance exception if (1) a startling event occurred; (2) the declarant made the statement while under the stress of excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Wesela*, 223 F.3d 656, 663 (7th Cir. 2000) (citing *United States v. Sowa*, 34 F.3d 447, 453 (7th Cir. 1994)). "All that the exception requires is 'that the statement be made contemporaneously with the excitement resulting from the event, not necessarily with the event itself.'" *Id.* (quoting *Smith v. Fairman*, 862 F.2d 630, 636 (7th Cir. 1988) (quoting *United States v. Moore*, 791 F.2d 566, 572 n.4

15

(7th Cir. 1986))).  The statements Loggman allegedly made to Sam Mitchell do not qualify as excited utterances because there is no identification of a startling event and no indication that the statements were made under the stress of the excitement caused by any such startling event. Although the words "gonna die up there," and indeed the entire conversation, may have been animated or even excited, that fact alone does not qualify the statements as an excited utterance.

Plaintiff also argues that Loggman's statements are not being offered for the truth of the matter asserted but rather to establish why Sam Mitchell contacted jail officials and why he was concerned for his son.  This characterization is disingenuous.  Plaintiff offers the out-of-court statement allegedly made by Loggman to Sam Mitchell to show the level of quality of medical care Plaintiff was receiving at the jail.

The opening phrase of paragraph 5–"On or about March 6, 2009, I received a phone call from inmate Brian Loggman"– is within Sam Mitchell's personal knowledge and is not hearsay. The Court grants the Motion to Strike as to the remainder of paragraph 5 on the additional ground that it is inadmissible hearsay.

### C.  Affidavit of Brian Loggman

Although the Court has stricken the Affidavit of Brian Loggman because it is undated, the Court considers the additional bases for striking paragraphs 4, 5, and 6 of the Affidavit argued by the Sheriff Defendants.  Brian Loggman was incarcerated at the Lake County Jail between March 2, 2009, and March 13, 2009, and he states that he and Plaintiff were "incarcerated in close physical proximity to one another.  I was able to see and hear what occurred in his jail cell, and also to communicate with [Plaintiff] and see and hear his communication with others."  Pl. Br., Exh. C, ¶ 3.

1.  *Paragraph 4*

Paragraph 4 provides: "Between March 3, 2009 and March 13, 2009, I witnessed [Plaintiff] suffering from severe narcotic and other drug withdrawal symptoms, which symptoms included seizures. I also witnessed multiple requests for medical treatment for his symptoms, but Defendants in this matter refused to provide [Plaintiff] with medical treatment." Pl. Br., Exh. C, ¶ 4. Defendants argue that this statement is conclusory and lacks factual support and that the statement runs contrary to the documented evidence they submitted in support of summary judgment. Defendants also argue that this statement contains unqualified medical opinions and that Loggman lacks personal knowledge of whether medical treatment was given.

Loggman cannot offer an opinion as to the medical cause of what Loggman observed Plaintiff experiencing, although he can offer his personal knowledge that he observed Plaintiff suffer a seizure. The Court grants the Motion to Strike the first sentence in part on this additional basis, striking the phrase "severe narcotic and other drug withdrawal symptoms, which symptoms included." That Loggman observed Plaintiff request medical treatment would be within his personal knowledge; however, the evidence of record that Plaintiff received medical treatment demonstrates that Loggman does not have personal knowledge of the medical treatment Plaintiff received. The Court denies the Motion to Strike as to the second sentence of paragraph 4 before the comma and grants the Motion to Strike on this additional basis as to the remainder of the sentence.

2.  *Paragraph 5*

Paragraph 5 provides: "On March 13, 2009, I witnessed [Plaintiff] suffer a seizure severe enough that he fell unconscious, hitting his head against the floor of his cell and losing control of his bowels. Defendants were aware of [Plaintiff's] condition, but I witnessed them leave [Plaintiff

lying on my[sic] cell floor, in his own excrement, and provide no medical treatment or other assistance." Pl. Br., Exh. C, ¶ 5. Defendants argue that these statements are conclusory and lack factual support and that they run contrary to the documented evidence submitted by Defendants. Defendants also argue that Loggman does not have personal knowledge of the medical treatment received by Plaintiff. The Court denies the Motion to Strike as to the first sentence of paragraph 5 because it is within Loggman's personal knowledge based on first-hand observation. The second sentence is also within Loggman's personal knowledge with the exception of the final phrase following the word "excrement" because the evidence of record that Plaintiff received medical treatment on March 13, 2009 for a seizure demonstrates that Loggman does not have personal knowledge of Plaintiff's medical treatment. The Court denies the Motion to Strike the second sentence through the word "excrement" and grants the Motion to Strike on this additional basis as to the remainder of the sentence.

3.      *Paragraph 6*

Paragraph 6 provides: "Following this incident, I witnessed [Plaintiff] continued[sic] to suffer from increasingly severe seizures and his physical condition deteriorate, and witnessed him make multiple requests to the Defendants for medical treatment. The Defendants, who also witnessed his deteriorating condition, refused to provide him medical treatment and did not refer him for outside medical treatment." Pl. Br., Exh. C, ¶ 6. Defendants argue that this paragraph suffers from the same flaws as paragraphs 4 and 5 and that this paragraph is also factually inaccurate because Defendants did refer Plaintiff for outside treatment. The first sentence is within Loggman's personal knowledge based on first-hand observation, and the Court denies the Motion to Strike as to that sentence on this basis. The Court grants the Motion to Strike the second sentence on the

additional basis that the evidence of record that Plaintiff received medical treatment for seizures on March 13, 2009, demonstrates that Loggman does not have personal knowledge of Plaintiff's medical treatment.

### D. Affidavit of Ramsey Alexander

Although the Court has stricken the Affidavit of Ramsey Alexander because it is undated, the Court considers the additional bases for striking paragraphs 4 and 5 argued by the Sheriff Defendants. Paragraphs 4 and 5 of Alexander's Affidavit are almost identical to paragraphs 4 and 5 of Loggman's Affidavit. Like Loggman, Alexander states that he was incarcerated at the Lake County Jail between the period of March 2, 2009, and March 13, 2009, and he states that he and Plaintiff were "incarcerated in close physical proximity to one another. I was able to see and hear what occurred in his jail cell, and also to communicate with [Plaintiff] and see and hear his communication with others." Pl. Br., Exh. D, ¶ 3.

*1. Paragraph 4*

Paragraph 4 of Alexander's Affidavit is identical to paragraph 4 of Loggman's Affidavit. For the same reasons set forth above as to paragraph 4 of Loggman's Affidavit, the Court finds that Alexander cannot offer an opinion as to the medical cause of what Alexander observed Plaintiff experiencing, although he can offer his personal knowledge that he observed Plaintiff suffer a seizure. The Court grants the Motion to Strike the first sentence in part, striking the phrase "severe narcotic and other drug withdrawal symptoms, which symptoms included." That Alexander observed Plaintiff request medical treatment would be within his personal knowledge; however, the evidence of record that Plaintiff received medical treatment demonstrates that Alexander does not have personal knowledge of the medical treatment Plaintiff received. The Court denies the Motion

to Strike as to the second sentence of paragraph 4 before the comma and grants the Motion to Strike on this additional basis as to the remainder of the sentence.

2.     *Paragraph 5*

As for paragraph 5, it appears that there is an error in the drafting of the Affidavit. Paragraph 5 of Alexander's Affidavit begins identically to paragraph 5 of Logmann's Affidavit, ending at the bottom of the first page with the phrase ". . . but I witnessed them leave [Plaintiff]". Pl. Br., Exh. D, p. 1, ¶ 5. However, at the top of page 2, the continuance of what should be paragraph 5 is a non sequitur; the words at the top of page 2 are identical to the last phrase of paragraph 6 of Loggman's Affidavit: "his deteriorating condition, refused to provide him medical treatment and did not refer him to outside medical treatment." Pl. Br., Exh. D., p. 2 (Alexander Affidavit); Pl. Br., Exh. C, p. 2 (Loggman Affidavit). Alexander's Affidavit does not have a paragraph 6. Therefore, the Court disregards the phrase at the top of page 2 and considers paragraph 5 of Ramsey's Alexander's Affidavit to end at the bottom of page 1. Thus, paragraph 5 provides, in its entirety: "On March 13, 2009, I witnessed [Plaintiff] suffer a seizure severe enough that he fell unconscious, hitting his head against the floor of his cell and losing control of his bowels. Defendants were aware of [Plaintiff's] condition, but I witnessed them leave [Plaintiff]." Pl. Br., Exh. D., p.1.

For the same reasons set forth above as to paragraph 4 of Loggman's Affidavit, the Court denies the Motion to Strike as to the first sentence of paragraph 5 because it is within Alexander's personal knowledge based on first-hand observation. The fragment of the second sentence included in the Affidavit is also within Alexander's personal knowledge, and the Court denies the Motion to Strike the second sentence.

## FACTUAL BACKGROUND[2]

Plaintiff Kwasi Mitchell was brought to the Lake County Jail on March 2, 2009, upon arrest by the United States Marshal. On the same date, jail staff completed a "Medical History and Screening" form for Plaintiff. Staff noted on the form that Plaintiff reported that he used heroin daily, that he used tobacco, and that he has a medical history of asthma and stomach ulcers. Plaintiff answered "yes" to the question, "Have you had withdrawal problems when you stop taking drugs." Def. Br., Exh. 4. Plaintiff informed medical personnel that he had seen a doctor, Dr. Gupta in Michigan City, within the past six months and that Plaintiff filled prescriptions for Nexium and a Combivent inhaler at the CVS pharmacy in Michigan City. On March 7, 2009, jail medical staff contacted the CVS pharmacy in Michigan City and learned that Plaintiff had not filled a prescription since October of 2008 and that he had never filled a prescription for Nexium or a Combivent inhaler.

On intake on March 2, 2009, jail medical staff assessed Plaintiff's vital signs and placed Plaintiff on the opiate checklist. On March 3, 2009, the jail physician placed Plaintiff on the opiate check list for five days and ordered prescriptions of thiamine, folic acid, Imodium, Tigan, and Clonidine. Defendants' medical expert, Johann Farley, M.D., a Board Certified Specialist in Family Medicine and Addiction Medicine, opined that from March 2 through March 6, 2009, Plaintiff's withdrawal symptoms were managed well by the medical staff at the jail.

---

[2] The Northern District of Indiana Local Rules require a party opposing summary judgment to include in the response brief or appendix a section labeled "Statement of Genuine Disputes" that identifies the material facts that the party contends are genuinely disputed so as to make trial necessary. *See* N.D. Ind. L.R. 56-1(b)(2). Plaintiff has failed to comply with this requirement. This violation, by itself, is not a basis for granting summary judgment as requested by the Sheriff Defendants in their reply brief. The Court has stricken the four Affidavits submitted by Plaintiff in support of his response brief for the reasons set forth above. Therefore, in setting forth the material facts, the Court considers the Statement of Material Facts submitted by the Sheriff Defendants and supported by admissible evidence.

In addition to the medical history and screening, Plaintiff was also given a routine mental health evaluation on March 2, 2009.  Plaintiff was found suitable for placement in the general population.  During his incarceration, Plaintiff was monitored by the jail's mental health provider, Edgewater Systems for Balanced Living.  Plaintiff was checked by mental health professionals on several occasions.  In the treatment notes for March 6, 2009, Plaintiff was referred to the medical department for continuation of the "opiate protocol" and it was indicated that the mental health staff was to continue monitoring Plaintiff and to make appropriate referrals.  Def. Br., Exh. 8, p. 1.  On the March 7, 2009 treatment note, Plaintiff reported for the first time that he takes Xanax, and a nurse was notified.  It was also noted that he "will be seen daily on rounds."  Def. Br., Exh. 8, p. 2.  On March 9, 2009, after seeing Dr. William Pierce in the clinic, Plaintiff was referred by Dr. Pierce for mental health review.

On March 9, 2009, a nurse was notified by a counselor that Plaintiff was not responding.  The nurse went to his cell, checked his vitals, and noted in the medical records that he was alert to person and time but disoriented to place.[3]  She spoke with Dr. Pierce.  She noted that Dr. Pierce was aware of Plaintiff's condition and that he ordered that Plaintiff be put on the opiate checklist for an additional three days and that he be seen in clinic the following day, March 10, 2009.  Plaintiff was given thiamine, Imodium, and folic acid, among other medications.  Plaintiff was seen in the clinic on March 11, 2009.  On March 12, 2009, Plaintiff was prescribed Risperdal by the attending jail physician.

On March 13, 2009, the jail medical record shows that, at 6:10 a.m., upon arriving back from passing medications, the author heard a commotion in the hall, noted officers talking to Plaintiff, and

---

[3] The Sheriff Defendants misrepresent this treatment note, stating in their material facts that the nurse noted that Plaintiff was "alert to time and place."  Def. Br., p. 3.

then returned to the nursing station. At 6:30 a.m., the same author noted that she attempted to give Plaintiff Immodium 2mg for loose stool. She indicted that Plaintiff was lying on the floor in his shower stall with his hands hand-cuffed behind him. She requested that he be placed in an upright position to take his medications but that he refused the medications. At 7:00 a.m., the nurse informed the FNP of Plaintiff's behavior.

At 8:00 a.m., a corrections officer requested that a nurse come to Plaintiff's cell. The nurse noted that Plaintiff was laying "flat on posterior side" in the middle of the hallway outside his cell door. *Id*. at 3. The nurse noted that Plaintiff was having difficulty getting up. The nurse noted that Plaintiff was soiled with both urine and feces. The correctional officer assisted Plaintiff into a wheelchair and wheeled Plaintiff into the shower. The nurse attempted to assist Plaintiff in taking his oral medication, but Plaintiff repeated, while yelling, "I don't want no pills!" The nurse indicated that Plaintiff refused his medication and spit them out on the floor. Plaintiff was then assisted out of the wheelchair by the correctional officer and proceeded to walk into the shower. The nurse indicated that Plaintiff "was being cleaned up & dressed for court." *Id*.

There is an entry at 7:50 p.m. "Called to 4F8. Inmate observed laying face down, non-responsive. Appears to be in postictal state with heavy labored respirations @ 40/min. O2 sat 84%. O2 started @ 15L per mask. Apical pulse 155. Inmate urinated on himself. Unable to get BP d/t inmate with spontaneous jerking. Sgt. notified to dispatch ALS ambulance." Def. Br., Exh. 7, p. 2. The record contains a second entry for 3/13/09, which provides: "8pm Seizure activity, noted @ this time approx. 2 min long. Ativan 2mg 1M given apical pulse 140 O2 sat 98%. Respiration labored @ 40/min. O2 remains in place @ 15L per mask. [signature]." *Id*. at p. 3. A third entry provides: "829 pm Inmate with seizure activity O2 remains in place @ 15L per mask. Ambulance

arrives @ this time. [signature]." *Id*. A fourth entry provides: "825 pm ambulance transporting to hospital. [signature]." *Id*. Lastly, the nurse indicated at 9:40 pm that Dr. Pierce was "aware" of the situation and at 8:45 p.m. the nurse indicated, "called D.O.M. & left message to call facility." *Id*.

The Superior Air-Ground Ambulance Service records indicate that at 8:08 p.m., a jail sergeant called for an ambulance to transport Plaintiff, that the ambulance arrived at Plaintiff's side at 8:19 p.m., and that at 8:41 p.m., the ambulance transported Plaintiff to Methodist Hospital, arriving at 8:46 p.m. Dr. Pierce's report shows that Plaintiff was admitted to Methodist Hospital on March 14, 2009, after having been treated in the emergency room.

Upon review of the Jail Medical Records and the Methodist Hospital Medical Records, Dr. Farley, the Sheriff Defendants' medical expert, opined that Plaintiff was suffering from neuroleptic malignant syndrome and hepatic failure due to his hepatitis C infection and abuse of multiple drugs. In his expert report, Dr. Farley opined that "the inmate's failure to disclose his true drug habits was the most influential factor to cause these events." Def. Br., Exh. 1. Dr. Farley adds that "there is no evidence of failure by correctional officers to promptly notify medical personnel when needed or failure to promptly assist medical personnel when needed." *Id*. He also opined that Plaintiff's injuries were not caused by any failure to manage his opioid withdrawal. In fact, Dr. Farley opined that most opioid withdrawals happen shortly after the drug's half-life, which, for heroin, is eight to twelve hours after use. Furthermore, he opined that the jail medical personnel provided adequate screening, medical treatment, and medication based on the information known to them and that Plaintiff was hospitalized when it became medically necessary.

Dr. Pierce, who treated Plaintiff at Methodist Hospital, indicated that Plaintiff's diagnosis at discharge was neural malignant syndrome, status epilepticus, rhabdomyolysis, heroin addiction

withdrawal, and pneumonia.  On March 20, 2009, Plaintiff was discharged by Dr. Pierce from Methodist Hospital back to the Lake County Jail.  On March 24, 2009, Mitchell was granted pre-trial release from Lake County Jail on condition that he enroll in the intensive outpatient substance abuse treatment program at Swanson Center.

## ANALYSIS

The Sheriff Defendants seek summary judgment in their favor on both the federal and state claims brought against them by Plaintiff in the Amended Complaint.  The Court considers each in turn.

### A.  42 U.S.C. § 1983

Plaintiff alleges that the Sheriff Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with adequate medical screening and medical treatment and failing to hospitalize him when necessary. Plaintiff alleges that all of these failures took place "in the execution of deliberate official policy and custom of Defendant, Lake County Sheriff's Department."  Am. Compl. ¶ 5.  Plaintiff also alleges that Defendant Lake County Sheriff's Department violated his constitutional rights under the same constitutional amendments by failing to properly train and discipline jail staff.

Plaintiff brings these claims under 42 U.S.C. § 1983, which provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *City of Monterey v. Del. Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 749 n. 9 (1999) (quotation omitted).  A cause of action may be brought under § 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must show (1) that he "was deprived of a right secured by the Constitution or federal law" (2) "by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

*1.     Deliberate Indifference Claims*

Plaintiff alleges that the Sheriff Defendants, namely the Lake County Sheriff's Department, Sheriff John Buncich in his individual capacity, and Jail Administrator Jeffrey Kumorek in his individual capacity,[4] are liable under 42 U.S.C. § 1983 for exhibiting deliberate indifference to Plaintiff's serious medical needs while he was incarcerated in the Lake County Jail in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

"The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment, as incorporated by the Fourteenth Amendment, to impose a duty on states 'to provide adequate medical care to incarcerated individuals.'" *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))). Prison officials violate this constitutional prohibition when they act with deliberate indifference to the serious medical needs of an inmate. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A plaintiff asserting a claim of deliberate indifference must demonstrate (1) that his medical condition is "objectively, sufficiently serious" and (2) that the defendants acted with a "sufficiently culpable state of mind." *Id*. (citing *Farmer*, 511 U.S. at 834).

---

[4] Plaintiff's claims against Sheriff John Buncich and Jail Administrator Kumorek in their official capacities is the functional equivalent of the claims brought against the Lake County Sheriff's Department and, thus, are treated as one. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

In his Amended Complaint, Plaintiff alleges that he became ill and injured and required urgent treatment on March 3, 2009. However, Plaintiff has not offered any evidence to support this allegation. In his response brief, Plaintiffs asserts generally that he was not provided "adequate treatment for his drug addiction and other medical conditions." Pl. Resp., p. 1. He does not identify what the "other medical conditions" are. The evidence of record shows that Plaintiff was addicted to heroin and Xanax and that he suffered seizures on March 13, 2009, for which he was taken to Methodist Hospital. Thus, for the purposes of this analysis, the Court presumes that Plaintiff had the serious medical conditions of drug addiction, beginning at the time of his incarceration on March 2, 2009, and of seizures that occurred on March 13, 2009.

Under the second element, deliberate indifference is "more than mere negligence but less than the purposeful or knowing infliction of harm . . . . Deliberate indifference requires that a prison official knows of and disregards a substantial risk of serious harm to inmate health or safety." *Estate of Novack v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *see also Holloway*, 700 F.3d at 1073 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Plaintiff has not met his burden of creating a genuine issue of material fact that the Sheriff Defendants knowingly disregarded a substantial risk of serious harm to Plaintiff as to either medical condition.

As for Plaintiff's drug addiction, during his medical intake evaluation on the date of his arrival at the jail, Plaintiff informed the medical staff that he abused heroin. That same day, he was placed on the opiate checklist. The following date, March 3, 2009, the physician placed him on the opiate checklist for five additional days. It was not until March 7, 2009, that Plaintiff informed staff that he also abused Xanax. On March 9, 2009, Plaintiff was placed on the opiate checklist for an

additional three days.  In his brief, Plaintiff argues only that Defendants knew that Plaintiff had abused heroin and Xanax, facts that Defendants acknowledge.  Plaintiff has offered no evidence or argument that Defendants knowingly disregarded his medical needs related to his drug addiction. Moreover, Dr. Farley, a Board Certified Specialist in Family Medicine and Addiction Medicine, offered his expert opinion that from March 2 through March 6, 2009, Plaintiff's withdrawal symptoms were managed well by the medical staff at the jail.  He  also opined that any injuries Plaintiff suffered were not caused by any failure to manage his opioid withdrawal.  Dr. Farley opined that most opioid withdrawals happen shortly after the drug's half-life, which, for heroin, is eight to twelve hours after use.

Regarding his seizures on March 13, 2009, the evidence of record shows that when medical staff was called to Plaintiff's cell at 7:50 p.m., the medical staff immediately began caring for Plaintiff and notified the correctional staff to call for an ambulance.  The ambulance was called, and Plaintiff was transported to Methodist Hospital.  Plaintiff has not offered any evidence to demonstrate that any of the Sheriff Defendants knowingly disregarded his medical needs.  Nor has Plaintiff discussed or questioned the evidence offered by the Sheriff Defendants demonstrating the medical care provided to Plaintiff.  Dr. Farley opined in his medical expert opinion that "there is no evidence of failure by correctional officers to promptly notify medical personnel when needed or failure to promptly assist medical personnel when needed." *Id*.  He also opined that the jail medical personnel provided adequate screening, medical treatment, and medication based on the information known to them and that Plaintiff was hospitalized when it became medically necessary.

Therefore, summary judgment in favor of the Sheriff Defendants is appropriate on all of Plaintiff's claims in Count I because Plaintiff cannot demonstrate that they were deliberately indifferent to his serious medical needs.

2.  *Claims Against Sheriff John Buncich and Jail Administrator Jeffrey Kumorek in their Individual Capacities*

In addition, the § 1983 claims for failure to provide medical treatment brought against Defendants Sheriff John Buncich and Jail Administrator Jeffrey Kumorek in their individual capacities fail because Plaintiff has not met his burden on summary judgment of identifying any genuine issue of material fact that Buncich or Kumorek had any personal involvement with Plaintiff's individual medical treatment or care. An individual cannot be held liable under § 1983 unless he caused or participation in alleged constitutional deprivation. *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). Nor can liability be based on an individual's supervisory role of others. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). "Although direct participation is not necessary, there must at least be a showing that the [individual] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Plaintiff has not made any showing that either Sheriff Buncich or Jail Administrator Kumorek had knowledge of Plaintiff's medical conditions, of his drug addictions, or of the events of March 13, 2009.

In the alternative, Defendants Buncich and Kumorek argue that they are entitled to summary judgment based on qualified immunity. "[G]overnmental actors performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010) (quoting

*Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  To assess whether a governmental actor is shielded from liability by qualified immunity, a court must consider "whether, taking the facts in the light most favorable to the plaintiff, the officers' conduct violated a constitutional right," and "whether the particular constitutional right was 'clearly established,' at the time of the alleged violation." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  In its discretion, the Court may consider which of the two inquiries to address first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff has failed to offer any evidence to create a genuine issue of material fact that his federal rights were violated.  The evidence of record shows that Plaintiff was provided with medical and mental health care from the outset of his incarceration at the Lake County Jail.  When Plaintiff suffered seizures on March 13, 2009, an ambulance was called and he was taken to Methodist Hospital for treatment.  The only medical expert in this case, Dr. Farley, found that all jail medical procedures were followed and that Plaintiff was provided proper medical care.  Because there is no evidence that Plaintiff's constitutional rights were violated, Defendants Buncich and Kumorek are entitled to qualified immunity on the § 1983 claims against them in their individual capacities.

*3.     Claims Against Lake County Sheriff's Department*

In Count I, Plaintiff brings claims under § 1983 for failure to provide medical treatment in violation of the Eighth and Fourteenth Amendments to the United States Constitution against the Lake County Sheriff's Department and against Sheriff John Buncich and Jail Administrator Jeffrey Kumorek in their official capacities.  In Count III, Plaintiff brings claims under § 1983 against the Lake County Sheriff's Department for failure to train and for failure to discipline in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The official capacity claims,

which, practically, are claims against the Lake County Sheriff's Department, and the claims against

the Lake County Sheriff's Department, are governed by the municipal liability standards set forth

in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.

Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the

government is responsible under § 1983." *Monell*, 436 U.S. at 694. To establish the liability of a

municipality for the constitutional deprivation, a plaintiff must demonstrate:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Phelan v. Cook Cnty.*, 463 F.3d

773, 789 (7th Cir. 2006)).

In the Motion for Summary Judgment, the Sheriff Defendants argue that Plaintiff has failed

to meet his burden of demonstrating a genuine issue of material fact as to any of the three forms of

an unconstitutional policy or custom. Plaintiff offers no argument in support of these claims in his

response brief. Although there are situations in which "a plaintiff can rely on h[is] own

circumstances to establish the existence of a widespread practice, that task is necessarily difficult

because 'what is needed is evidence that there is a true municipal policy at issue, not a random

event.'" *Diab v. Chi. Bd. of Educ.*, 850 F. Supp. 2d 899, 925 (N.D. Ill. 2012) (quoting *Grieveson*

*v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008)). In order "to prevail on this type of claim, plaintiffs

relying on their specific situations must weave those separate incidents together into a cognizable

policy." *Id.* (quoting *Phelan*, 463 F.3d at 790) (quotation marks and other citations omitted). The

Court finds that, even if Plaintiff had suffered either of the constitutional violations alleged in Counts I or III, Plaintiff has failed to raise a genuine issue of material fact that he suffered a constitutional deprivation as a result of an express policy, a widespread practice or custom, or a person with final policymaking authority. Thus, summary judgment in favor of Sheriff Buncich and Jail Administrator Kumorek in their official capacities and the Lake County Sheriff's Department on Count I and in favor of the Lake County Sheriff's Department on Count III is granted.

*4.    Conclusion*

Based on the foregoing, Plaintiff has failed to demonstrate any genuine issue of material fact as to his § 1983 claims against the Sheriff Defendants in Counts I and III, and the Court grants summary judgment in their favor on these claims.

**B.  State Law Claims**

*1.    Indiana Constitutional Claims*

Plaintiff alleges in Count I that the Sheriff Defendants failed to "provide adequate medical treatment, medical screening, and/or medication to the Plaintiff as required for his injuries and illness, including failure to hospitalize him when informed he required hospitalization . . ." and that such a failure "constitutes a violation of the Plaintiff's rights under Article I, Sections 15, 16, and 23 of the Indiana State Constitution." Am. Compl. ¶¶ 5, 10. In Count III, Plaintiff alleges that the Lake County Sheriff's Department failed to follow adequate hiring and training procedures and failed to reprimand or discipline officers, administrators, and medical personnel in violation of "Plaintiff's rights under Article I, Sections 15, 16, and 23 of the Indiana State Constitution." Am. Compl. ¶ 22.

Article 1, Section 15 of the Indiana Constitution provides that "No person . . . confined in jail, shall be treated with unnecessary rigor." Ind. Const. Art. I, § 15.

> Cases recognizing violations of Article 1, Section 15 involve situations where a prisoner was tortured, had a tooth knocked out, was repeatedly beaten, kicked, and struck with a blackjack and beaten with a rubber hose while he was stretched across a table, where a prisoner was beaten with police officer's fists in both eyes, cut on the top of his head, and beaten with a rubber hose on the head and ears, and where a prisoner was severely injured after being shot by police during a protest.

*Ratliff v. Cohn,* 693 N.E.2d 530, 541 (Ind. 1998) (internal citations omitted). Although Plaintiff alleges in his Amended Complaint that he was deprived of adequate medical care during his incarceration at the Lake County Jail, Plaintiff has offered no evidence or argument in support of those allegations in response to summary judgment. Thus, Plaintiff has not demonstrated a genuine issue of material fact that he was treated with "unnecessary rigor" under the Indiana Constitution. Summary judgment in favor of the Sheriffs Defendants is granted on Plaintiff's claims brought under Article I, Section 15 of the Indiana Constitution.

Article I, Section 16 of the Indiana Constitution provides, in relevant part, that "[c]ruel and unusual punishments shall not be inflicted" and "all penalties shall be proportionate to the nature of the offense." Ind. Const. Art. I, § 16. Section 16 is, in application, equivalent to the Eighth Amendment to the United States Constitution. *See Naked City, Inc. v. State*, 460 N.E.2d 151, 161 (Ind. Ct. App. 1984). Under Section 16, "[p]risoners of the state are entitled to reasonable medical care. However, challenges to the mere adequacy of individual care or claims of medical malpractice are not of constitutional dimension." *Id.* Nevertheless, when "reasonable medical care is denied deliberately, and such denial results in the infliction of unnecessary pain, suffering or disability both the Eighth Amendment of the Constitution of the United States and Article 1, Section 16 of the Indiana Constitution are implicated." *Id.* For the same reasons set forth above in the context of the

alleged Eighth Amendment violation, Plaintiff has failed to demonstrate a genuine issue of material fact that the Sheriff Defendants were deliberately indifferent to his medical care. Summary judgment in favor of the Sheriff Defendants is granted on Plaintiff's claims brought under Article I, Section 16 of the Indiana Constitution.

Article I, Section 23 of the Indiana Constitution provides that "the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Ind. Const. Art. I, § 23 (2012). The Sheriff Defendants argue that it is unclear from the Amended Complaint in what way Plaintiff alleges he was treated differently. Plaintiff offers no argument or explanation in response to support this claim. Plaintiff has not identified any evidence that raises a genuine issue of material fact as to his allegations that the Sheriff Defendants violated Article I, Section 23 of the Indiana Constitution. Accordingly, the Court grants summary judgment in favor of the Sheriff Defendants on Plaintiff's claims brought under Article I, Section 23 of the Indiana Constitution.

Finally, for the same reasons set forth above as to the federal constitutional claims, Defendants Buncich and Kumorek, in their individual capacities, are entitled to qualified immunity on the Indiana constitutional claims brought against them. *See Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006) ("[T]he qualified immunity applicable to 42 U.S.C. section 1983 claims applies equally to claims against government officials under state law.") (citing *Foster v. Pearcy*, 387 N.E.2d 466, 450 (1979)).

2.    *Indiana Common Law Claim*

In the Motion for Summary Judgment, Defendant Lake County Sheriff's Department construes Count III of the Amended Complaint as a claim for negligent hiring and training under

Indiana state common law and seeks judgment in its favor on these claims. The Court finds that Plaintiff has not alleged any state common law claims for negligent hiring and training. Rather, Count III alleges a constitutional claim for failure to train under the Indiana Constitution and the United States Constitution, which the Court has addressed above.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Sheriff Defendants[sic] Motion to Strike Plaintiff Affidavits Filed in Response to Motion for Summary Judgment [DE 61] and **GRANTS** the Sheriff Defendants[sic] Motion for Summary Judgment [DE 48], granting summary judgment against Plaintiff Kwasi Mitchell in favor of Defendants John Buncich, individually and in his official capacity as Lake County Sheriff, Lake County Sheriff's Department, and Jeffrey Kumorek, individually and in his capacity as Administrator of the Lake County Jail on all claims brought against them in the Amended Complaint.

The Court **REAFFIRMS** the Final Pre-Trial Conference setting of <u>**February 15, 2013**</u>, and the Jury Trial setting of <u>**March 11, 2013**</u>, as to Plaintiff and Defendant Med-Staff, Inc. **only**.

So **ORDERED** this 24th day of January, 2013.

<u>s/ Paul R. Cherry</u>
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record